You're back. I am, Your Honor. Again, may it please the Court, I'm Robert Jobe, and I'm appearing once again here, but this time on behalf of Kanwal Dallar-Singh. In this case, the immigration judge and the board found that Mr. Singh not only was not credible, but that he'd submitted a frivolous asylum application. That is an application that contains a material element that was deliberately fabricated. The crux, the principal piece of evidence that both the IJ and the board relied upon were letters, two different letters, from a doctor in India, a man named Dr. Bedi. One that had been presented by Mr. Singh through his former counsel, the firm of Saikon and Saikon, lawyers that had been indicted and actually convicted of submitting fraudulent asylum applications. And then a second letter that was obtained pursuant to a DHS investigation that took place in India. From Dr. Bedi, essentially recanting the earlier letter, saying that he did not write the letter, he doesn't even know this applicant for asylum, Mr. Singh. If the government's investigation is correct, not only is Mr. Singh not credible, his application is clearly frivolous. The problem that we have with this case is we think that Dr. Bedi, when he made that statement to DHS investigators, I firmly believe he's not telling the truth. I think the original letter came from his office, it's on his stationery, and I believe he signed it. And our problem is that we want the opportunity to prove that. Well, you – the problem is that there was a ton of opportunity to prove it. I strongly disagree with that, but you know. Well, I know you do, and that's why I'm trying to set it out so that you can tell me why. I mean, he had – he specifically asked for a continuance for 6 months to examine and contest the Shermer report in March of 2005, and 6 months later, all he had to show for it was an indecipherable fact as to which there was no foundation. So it's not as if this all went down in 5 minutes. No. But, Your Honor, you have to first wonder what evidence could we have gotten to prove that Dr. Shermer was lying. He wasn't going to come forward and say I was lying. I'm not wondering anything. I mean, I'm just looking at what's happened. Yeah. The best evidence that was available here, in our view, would have been a forensics report on these two documents. No doubt, but he had 6 months to get it, is my point. No, he didn't, because no one knew where the documents were. All that time, the two documents were in the possession of the government. Nobody knew that. The government disclaimed any knowledge about where the documents were. It wasn't until the final hearing, the day that the judge rendered his decision, that the government came forward and said, oh, yeah, actually, we do have the documents. And the government lawyer says, we can make them available. This is on the day the decision was rendered. He finally comes forward and says, yes, we do have the documents, and we can make them available, but there's no point. Up until that time, although both of these documents had been in the government's possession, and we've never even seen the originals of either document. Throughout this entire process, they were in the hands of the government. On the day of the decision, they come forward and say, oh, yeah, actually, we do have them. We can make them available, but there's no point. The judge at that point said, I agree, there's no point. He renders his decision. No, we didn't have an opportunity. We never saw the original documents because they were in the government's possession. I mean, you're the messenger at this point. I understand that. But a continuance was specifically asked for and received. That's correct. But that didn't give us the documents. Well, I don't know whether they were even asked for. They were. But the problem with this record, Your Honor, is if you look at this record, there were three status conferences that, for whatever reason, Judge Murray never put on the record. And that's very frustrating. And if you look at when the second to the last hearing, when this issue came up, every time we asked for the documents, he goes off the record again. And then he comes back on the record, and he doesn't come back to the conversation that was had. And that's very frustrating because the record doesn't reflect the various conversations that were had about these documents. But the bottom line is we were trying to get these documents. Hillary Allred, the lawyer on the case, she made a specific request for the documents on the day that we were set to cross-examine one of the government investigators. At that point, the trial attorney says, I don't know where the documents are. He's presenting this document to evidence. He doesn't even have the original document. In these proceedings, the normal process is when the government offers a document, they come forward and they show opposing counsel the original. He couldn't. He wasn't even in a position to do that. But we didn't know that until the day we were cross-examining the investigator because that's the way it normally works. So on the day that they present their witness, on the day that we have the opportunity to cross-examine this guy, the day they normally would come forward with the original document, they say, we don't have it. And so then we go to the next hearing and they finally say, okay, actually, we do have the document, but I don't see the point. No. You've got to give us the original document and give us some opportunity to at least see what the original said. What would you have gotten out of the original document that you wouldn't have gotten? What exactly is this evidence you developed? My view, Your Honor, is that our best way of attacking this frivolousness finding is to demonstrate that Dr. Betty's lying. And the best evidence that Dr. Betty's lying would be an analysis that confirms that the stationery is the same on the two letters and that the signatures are the same. If the signatures match, letter one and letter two, Dr. Betty authored both documents. Why is that? Because if the signatures are his, if he signed both documents, there's no way he can say. You can compare signatures with a copy just as well as an original. No, you can't. You can't do forensics on a copy. And if you look at the copy that's in this record, you can't even see a signature. We don't even know if his signature on the first letter is in English or Punjabi. And we have no way of knowing that because you can't read the copy and we've never seen the original. And we've never seen the original because the government had it throughout this entire process. You've never seen the original. Never seen the original. Well, I know, but the original was submitted by your client. No. The original was submitted by his lawyer who's been indicted. We don't know exactly how that no, Your Honor, he may well have seen the original. That doesn't help us. We're his lawyer and we're representing him. But if we want to do a forensics examination to compare those two things, he's not going to be helping do that and he's not in a position to even remember what that. As you very well know, that misses the point. No. I don't know that. Which is that your client had the original and submitted it. No. Actually, he didn't. The letter, if you look at his testimony, his father obtained the document. The document was mailed to his counsel. His counsel submitted it. It's not at all clear to me that he's ever even seen the letter. But the bottom line. Carry it forward, though. So you've now got the documents and you prove it's the same signature, you prove it's the same stationery. Then what? Where does that get you? Then the inference that we would ask the judge to draw is that Dr. Betty is lying when he said he didn't issue letter number one. He's also lying when he says that he never issues a certificate that's in English. He's lying. Our view is that he issued letter one. That doesn't prove that letter one is true, but it proves, at least offers some strong evidence that he's lying to the investigators when he said he didn't offer that letter, he's never heard of this guy. Why is letter number two the anchor? Pardon me, Your Honor? Why isn't letter number two just as well forged? It could be. But the bottom line here is we know that letter two isn't forged because DHS got that letter from him personally. So the judge is saying we know letter two comes from Dr. Betty. But if letter two, the signature on letter two matches the signature on letter one, well, then letter one came from Dr. Betty as well. And Dr. Betty was lying when he told these investigators that he had nothing to do with that document. And this is critical because the judge made a finding that not only is he not credible, but his application is frivolous. And if it's frivolous, he's permanently ineligible from any immigration benefits here in the United States at all. And yet the critical evidence, as his attorneys, we've never seen either of these documents, the originals. And the key way that we would have of attacking it, really, the forensics, is not advantages. I'm still not sure how that proves that letter one. I mean, let's say he signed it, but he says, look, he was not my patient. Right. All it seems to me that proves is that Dr. Betty, who's a forger, forged or gave a false letter one. And you might be right. And maybe the immigration judge would not, you know, but we would not agree with our finding, with the conclusion that we're offering. But the bottom line is we have to be able to make the case. We've got to be able to present the evidence. And we can't present the evidence and make the argument if we don't get the original documents. Did you ask for the original document, to look at the original document at the hearing when they said they had it? Yes, Your Honor. And did the government present it? No. The government said, we don't know where the documents are. No, but then they said, we do have them. At the final hearing, the government came forward. Did you ask for it then? Yes. And the judge said, I don't know. I'm not going to continue this any further. It's been pending for four years. But, you know, since the investigative report came in, the thing had only been pending for nine months. So you did ask for the document? Oh, yeah. Absolutely. At that point? Yes. But the judge agreed with the government lawyer that there was no point. But as the result of that, we never had an opportunity to do the forensics that we think we need in order to build our case. And I agree with your point. The judge may not ultimately agree with us, but we've got to be able to make the argument. Okay. Thank you. Thank you. I may please the Court. Jonathan Robbins here on behalf of Eric Holder, the respondent. Certainly, I would echo my colleague's sentiment that if this document is fraudulent with regard to the medical certificate authored or not authored by Dr. Betty, that that certainly makes this a frivolous application and certainly upholds the credibility finding. With respect to this opportunity to respond to the letter and the case that the government made with respect to the frivolous asylum application, as Your Honor noted, this case was continued for six months. They got eight months to make their case. At no time was there a subpoena of this original letter, which, as Your Honors have pointed out, he was the one that submitted the original in the first place. Mr. Jobe is saying, though, that the government's lawyer said that they didn't have it. Why did he have the subpoena? They weren't able to locate it. But then during the course of proceedings, he is correct in that eventually they did, the government did discover that they had it. It was in an evidence locker, and they said that they could make it available. But at that point, the immigration judge said, I don't see the point. And as Your Honors have noted, you know, so you show that the signatures are the same. That doesn't really make your case. And, again, the immigration judge discussed this at length. I couldn't use it, though. I mean, I think Mr. Jobe's point is that it could make his case, and he's entitled to make the argument. Well, if you read the record where they're discussing, where they're requesting to make this forensics analysis, the immigration judge is saying it's not going to make a difference in what I find, even if the signatures match up. And there's a lengthy discussion about what's happening here. So, again, the point that Your Honors have made, you know, what is the point if you show that the signatures are the same? What is a reasonable opportunity? I mean, they continued the case for months. They had an opportunity. They could have subpoenaed the document. There's a number of things they could have done. They could have presented live testimony. You know, they claimed that Dr. Betty was threatened and that he came to his father and spoke to him. Where is the updated affidavit from his father that says, yes, Dr. Betty came and spoke to me? I mean, there's a whole host of things they could have done. And, you know, only at the last minute after the case, I mean, how long is the immigration judge supposed to continue the case for? You know, I would argue that giving them the continuance that they requested so that they could prepare their case is a sufficient opportunity to respond to the government's allegations. They had an opportunity to cross-examine Agent Sharma. The immigration judge reasonably determined that the DHS agent who was performing the investigation performed his job the way he should have, and that's ultimately what this boils down to. You know, certainly once the immigration judge had determined that this was a false document and Petitioner testified, continued to testify to bolster his claim in saying that this document was true, once you've established that you have a person here who's willing to lie under oath in order to obtain an immigration benefit, you know, what is an immigration judge supposed to believe at that point? All of a sudden, the story that he's been given, all of the holes in the story really flare up. I mean, this claim that he was injured, he couldn't even lift his arms, couldn't do knee bends, you know, all of a sudden, but yet he's claiming that for three years he lifted bags of cement all day long with basically no time off. I mean, it just doesn't make sense. He had opportunities to corroborate his claim. His cousin, who could have corroborated his claim regarding arrests and torture, he submitted an affidavit that mentioned nothing about arrests or torture, an affidavit, I might add, which conflicts with the Petitioner's own asylum application because it says he picked him up in San Jose when he came to the United States, whereas Petitioner claimed it was Texas. And all of a sudden, all these holes are certainly, I think that certainly the biggest problem was getting caught red-handed. I mean, as my colleague mentioned, you know, the law offices of SACON is involved with all these fraudulent medical certificates and basically they're claiming, well, ours is real. You know, given the fact that we have testimony from a DHS agent who went to the doctor, the doctor said, I don't know this guy, I couldn't have even accommodated him, I couldn't have treated him the way he says I did because I didn't even have a hospital. It is a little troubling, though. You know, the Petitioner goes to a lawyer and the lawyer says, you know, here I'll do what's necessary to get you, you know, get your papers straightened out in the United States. And it turns out that the firm is, as you say, already seems to agree is committing a major fraud. Is it really fair or appropriate to tag the client and debar him forever from obtaining immigration relief for? Well, respectfully, Your Honor, that's not what they're arguing. They're not arguing that, oh, I had a solid claim but my lawyer just basically submitted documentation on my behalf. They're claiming, no, this document is real. Even though there's all these other fraudulent documents, this one happens to be real. And he testified, continued to testify, once he had become aware that this document may be a frivolous document, a fraudulent document, the immigration judge questioned him again and he stuck to that. So he's not saying that the law firm lied on his behalf or anything like that. They're not making that claim. He's just essentially pushing forward and saying, no, my medical certificate is real. A medical certificate which, by the way, doesn't even have the correct dates on it. I mean, Dr. Betty testified that he didn't even have a typewriter. It's typewritten. I mean, certainly there is a sound basis here for the immigration judge to have found that this was a fraudulent document, given the fact that you have government investigators overseas testifying that, yes, we're investigating these medical certificates and this is a fraudulent document. So unless there are any specific questions. Thank you. Thank you very much for your time, Your Honors. Appreciate it. Yeah, of course there's the judge could draw an inference that the document is fraudulent. That's not the point. The point is that we didn't have an opportunity, a reasonable opportunity to examine the evidence, as we're guaranteed by statute, and present rebuttal evidence because we weren't given the originals. And I know that this may not ultimately affect the judge's conclusion. But that's, again, that's not the point. It may affect the judge's conclusion. We won't know until we get the evidence, until we have an opportunity to examine the originals and present the evidence that we want to present. And we were precluded from doing that only because the originals were never turned over to us. What would be the best argument you could make? This is a doctor that produced, as this investigation showed, hundreds of forged documents. And the claim would be that your client is the one guy who actually went to him and got them. No, that's not the evidence, Your Honor. The evidence is that the law firm involved here presented fraudulent documents in some cases. There's no evidence that Dr. Betty presented fraudulent documents in any other case or even presented letters in other cases. All we know about Dr. Betty is that in this case there are two letters from him, one that our client claims is his. What he says is, I didn't provide this document. And the inference would be that the firm manufactured or created this document. Right, exactly. So the whole thing, the government's case rests in large part on Dr. Betty's statement to these examiners that I did not issue this letter, the letter, the first letter. And if the signatures are the same, then Dr. Betty's lying about not having issued that first letter. Well, the government's most important piece of evidence crumbles. It loses all of its force. And so because it's the central piece of evidence and because it would crumble if we could show that the signatures are the same, it's a critical piece of evidence and we should have been given the originals and we should have been able to do forensics. It's as simple as that. Okay. Thank you. Thank you, Your Honor. Accusers' argument will stand some minutes.
judges: Kennelly, Kozinski, Rymer